C. D. Michel – SBN 144258
Sean A. Brady – SBN 262007
Matthew D. Cubeiro – SBN 291519
Alexander A. Frank – SBN 311718
MICHEL & ASSOCIATES, P.C.
180 East Ocean Blvd., Suite 200
Long Beach, CA 90802
Telephone: 562-216-4444
Facsimile: 562-216-4445
Email: cmichel@michellawyers.com

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIRANDA WALLINGFORD and RICHARD WALLINGFORD,<br><br>Plaintiffs,<br><br>v.<br><br>ROBERT BONTA, in his official capacity as Attorney General of the State of California; and DOES 1-10,<br><br>Defendants. | Case No.: 8:21-cv-01412 DOC (KESx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Hearing Date: October 18, 2021<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: David O. Carter<br><br>[Filed concurrently with Notice of Motion and Motion for Preliminary Injunction; Declaration of Sean A. Brady; Declaration of Miranda Wallingford; Declaration of Richard Wallingford; and Proposed Order] |

# TABLE OF CONTENTS

**Page**

Table of Contents .................................................................................................... i

Introduction ........................................................................................................... 1

Factual And Procedural Background ..................................................................... 3

I.     California's Statutory Scheme ...................................................................... 3

II.    Nature of the Dispute ................................................................................. 4

Legal Standard ...................................................................................................... 9

Argument ............................................................................................................... 9

I.     Plaintiffs Are Likely to Succeed on the Merits .......................................... 9

     A.    The Challenged Provisions Implicate the Second Amendment ............ 11

     B.    The Challenged Provisions Fail Heightened Scrutiny as Applied to the Wallingfords ..................................................................................... 13

          1.    The Challenged Provisions Are Not "Substantially Related" to Any Public Safety Interest as Applied to the Wallingfords ...................... 14

          2.    The Challenged Provisions lack a reasonable "fit" with the State's interest as applied to the Wallingfords ............................................. 14

II.    Plaintiffs Continue to Suffer Irreparable Harm ......................................... 16

III.   The Balance of Equities Favor A Preliminary Injunction ......................... 17

III.   A Preliminary Injunction Serves the Public Interest ................................. 18

Conclusion ........................................................................................................... 19

TABLE OF CONTENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*All. for the Wild Rockies v. Cottrell*,
  632 F.3d 1127 (9th Cir. 2011) ......................................................... 9

*Am. Trucking Ass'ns., Inc. v. City of Los Angeles*,
  559 F.3d 1046 (9th Cir. 2009) ......................................................... 9

*Ams. for Prosperity v. Bonta*,
  -- U.S. --, 2021 U.S. LEXIS 3569 (2021) .................................... 15

*Buckley v. Valeo*,
  424 U.S. 1 (1976) .......................................................................... 13

*Caetano v. Massachusetts*,
  -- U.S. --. 136 S. Ct. 1027 (2016) ................................................ 9

*Cincinnati v. Discovery Network, Inc.*,
  507 U.S. 410 (1993) ...................................................................... 15

*Clark v. Jeter*,
  486 U.S. 456 (1988) ...................................................................... 15

*District of Columbia v. Heller*,
  554 U.S. 570 (2008) .......................................................... 9, 10, 11, 12

*Duncan v. Becerra*,
  265 F. Supp. 3d 1106 (S.D. Cal. 2017) ......................................... 10

*Duncan v. Becerra*,
  742 F. App'x 218 (9th Cir. 2018) .................................................. 17

*Edenfield v. Fane*,
  507 U.S. 761 (1993) ...................................................................... 13

*Elrod v. Burns*,
  427 U.S. 347 (1976) ...................................................................... 17

*Jackson v. City & Cnty. of S.F.*,
  746 F.3d 953 (9th Cir. 2014) ......................................................... 13

ii

*Klein v. City of San Clemente*,
   584 F.3d 1196 (9th Cit. 2009) .................................................. 18

*McCullen v. Coakley*,
   573 U.S. 464 (2014) ............................................................... 15

*McCutcheon v. FEC*,
   572 U.S. 185 (2014) .......................................................... 13, 15

*McDonald v. City of Chicago*,
   561 U.S. 742 (2010) ............................................................ 9, 17

*Melendres v. Arpaio*,
   695 F.3d 990 (9th Cir. 2012) .................................................. 16

*Monterey Mech. Co. v. Wilson*,
   125 F.3d 702 (9th Cir. 1997) .................................................. 17

*Packingham v. North Carolina*,
   -- U.S. --, 137 S. Ct. 1730 (2017) .......................................... 15

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*,
   460 U.S. 37 (1983) ............................................................... 13

*Preminger v. Principi*,
   422 F.3d 815 (9th Cir. 2005) .................................................. 18

*R.A.V. v. City of St. Paul*,
   505 U.S. 377 (1992) .............................................................. 13

*Rhode v. Becerra*,
   445 F. Supp. 3d 902 (S.D. Cal. 2020) ..................................... 10

*Rodriguez v. Robbins*,
   715 F.3d 1127 (9th Cir. 2013) ................................................ 17

*Silvester v. Becerra*,
   -- U.S.--, 138 S. Ct. 945 (2018) ............................................. 15

*Silvester v. Harris*,
   843 F.3d 816 (9th Cir. 2016) .................................................. 10

*Tucson Woman's Clinic v. Eden*,
   379 F.3d 531 (9th Cir. 2004) .................................................. 13

iii

TABLE OF AUTHORITIES

*Turner Broad. Sys., Inc. v. FCC*,
   520 U.S. 180 (1997) ............................................................................ 15

*United States v. Chovan*,
   735 F.3d 1127 (9th Cir. 2013) ....................................................... *passim*

*United States v. Phillips*,
   827 F.3d 1171 (9th Cir. 2016) ........................................................... 11

*United States v. Vongxay*,
   594 F.3d 1111 (9th Cir. 2010) ........................................................... 11

*Valle del Sol Inc. v. Whitting*,
   732 F.3d 1006 (9th Cir. 2013) ........................................................... 17

*Ward v. Rock Against Racism*,
   491 U.S. 781 (1989) ......................................................................... 15

*Winter v. Nat. Res. Def. Council, Inc.*,
   55 U.S. 7 (2008) ................................................................................. 9

**Statutes**

18 U.S.C. § 922 ............................................................................. 11, 12

Cal. Civ. Proc. Code § 527.6 ...................................................... *passim*

Cal. Civ. Proc. Code § 527.9 ...................................................... 3, 4, 6

Cal. Pen. Code § 653m ........................................................................ 3

Cal. Pen. Code § 27500 .............................................................. 4, 8, 19

Cal. Pen. Code § 27540 .............................................................. 4, 8, 19

Cal. Pen. Code § 29825 ............................................................... *passim*

Cal. Pen. Code § 29830 ........................................................................ 3

Cal. Pen. Code § 30305 ...................................................................... 3, 4

Cal. Pen. Code § 30306 ................................................................... 4, 19

Cal. Pen. Code § 30370 ................................................................... 4, 19

**Other Authorities**

Assem. B. 108, 1991-1992 Reg. Sess. (Cal. 1991), 1991 Cal. Stats. 4415 ...................... 12

U.S. Const., amend. I .............................................................. 14, 17

U.S. Const., amend. II ..............................................................*passim*

TABLE OF AUTHORITIES

1

## INTRODUCTION

2    Without exception, California prohibits any person subject to a restraining order

3    issued under section 527.6 of the California Code of Civil Procedure from possessing a

4    firearm. It also prohibits others from giving possession of a firearm to any person subject

5    to such an order. Collectively, these restrictions ("Challenged Provisions") thus

6    completely bar individuals subject to a restraining order from exercising their Second

7    Amendment rights. To be sure, prohibiting access to arms by those subject to a

8    restraining order may very well pass constitutional muster in many instances. But

9    California superior courts have wide discretion to issue these orders without first

10   determining that the restrained person poses any danger. The consequences of these

11   orders are thus all too often unconstitutionally excessive. This is one of those instances.

12   Plaintiffs Miranda and Richard Wallingford are a married couple who have lived

13   peacefully in their Huntington Beach, California home for more than 50 years. In 2013, a

14   new neighbor moved in next-door. Soon after, this new neighbor began making false

15   criminal allegations, threats of violence, and harassing actions against the Wallingfords.

16   She even petitioned for a restraining order against Mr. Wallingford based on false assault

17   allegations. In response, the Wallingfords had security cameras installed on their

18   privately owned property to record evidence of their neighbor's troubling conduct to use

19   to defend themselves in court. The cameras served their intended purpose, capturing

20   images of the neighbor making threats and violating their property. After reviewing those

21   images, a superior court judge denied the neighbor's *first* request for a restraining order

22   against Mr. Wallingford, finding that the only evidence of harassment was from the

23   neighbor, not from Mr. Wallingford.

24   When the neighbor continued her hostile actions in the months that followed, Mrs.

25   Wallingford possessed the evidence she needed to secure a restraining order against the

26   neighbor. The cameras, however, also prompted the neighbor to counter Mrs.

27   Wallingford's petition for a restraining order with *another* one of her own against both

28   Wallingfords, alleging that the cameras' placement violated her privacy. Despite noting

1

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

that the Wallingfords' "course of conduct" had been corrected because the cameras had "been repositioned such that they point only at areas . . . in public view, which the court finds acceptable," the superior court still issued a restraining order against the Wallingfords, ordering that they maintain the cameras in that position. The court made no finding that the Wallingfords had broken any law with the positioning of their cameras. Nor did it make any finding that they posed a danger to themselves, any other person, or the public. In fact, the court never even explained exactly how the Wallingfords' conduct met the standard for issuance of a restraining order under California law.

Because of the Challenged Provisions, the superior court's order means that the Wallingfords cannot possess firearms. Indeed, the Wallingfords have been forced to surrender their firearms and ammunition to a licensed firearms dealer for storage pending expiration of the restraining order, for which storage the Wallingfords must pay fees. And they are prohibited from acquiring other firearms in the meantime. In short, the Challenged Provisions completely bar the Wallingfords from exercising their Second Amendment rights just because they had security cameras installed on their property in response to documented threats of violence and harassment from their neighbor— cameras that they themselves voluntarily moved when that same neighbor complained about their placement. Such innocuous behavior simply cannot justify the revocation of one's constitutional rights for a day, let alone years; particularly when the issuing court made no finding that the persons subject to the order pose any danger to any other person, the public, or themselves.

Thus, the Wallingfords challenge the constitutionality of the Challenged Provisions as applied to them and seek a preliminary injunction against their enforcement pending litigation on the merits. While California may be able to justify barring the Second Amendment rights of *some* people subject to a restraining order, the Challenged Provisions cast too wide a net by including the Wallingfords. They are thus likely to succeed on the merits. And the irreparable harm of not only being denied their Second Amendment rights but having to pay to store their own property wrongly denied them

should be ended now. There is no public interest in continuing to deny Plaintiffs their rights or property.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.   CALIFORNIA'S STATUTORY SCHEME

California allows any person who alleges to have suffered "harassment" to petition a California Superior Court to issue an order prohibiting the person(s) allegedly causing the "harassment" from continuing to do so. Cal. Civ. Proc. Code § 527.6(a), (g), (i). "If the judge finds by clear and convincing evidence that unlawful harassment exists, an order shall issue prohibiting the harassment." *Id.* § 527.6(i). This includes any "order enjoining a party from harassing, intimidating, molesting, attacking, striking, stalking, threatening, sexually assaulting, battering, abusing, telephoning, including, but not limited to, making annoying telephone calls, as described in Section 653m of the Penal Code, destroying personal property, contacting, either directly or indirectly, by mail or otherwise, or coming within a specified distance of, or disturbing the peace of, the petitioner." *Id.* § 527.6(b)(6)(A). In this context, "harassment" is defined as:

> unlawful violence, a credible threat of violence, or a knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose. The course of conduct must be that which would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

*Id.* § 527.6(b)(3).

California prohibits any person subject to an order issued under section 527.6 from acquiring, owning, or possessing a firearm or ammunition. Cal. Penal Code §§ 29825, 30305. Courts must order persons subject to such orders to relinquish any firearms they own or possess, either by surrendering the firearm to the control of local law enforcement officials, by selling the firearm to a licensed gun dealer, or giving it to such a dealer for storage. Cal. Civ. Proc. Code § 527.9(b),(c); Cal. Penal Code § 29830(a),(b). In either circumstance, a reasonable storage fee may be charged. *Id.* To date, Miranda and Richard

Wallingford have paid $3,023.04 in storage fees since the issuance of the restraining orders against them and continue to pay $120 each month they remain in effect. Decl. Miranda Wallingford Supp. Mot. Prelim. Inj. ("Miranda Decl.") ¶ 34. California also generally prohibits the sale, delivery, transfer, or giving possession or control of any firearm or ammunition to a person subject to such an order. Cal. Penal Code §§ 27500, 27540, 29825, 30305-30306, 30370.

## II.   NATURE OF THE DISPUTE

For over 50 years, Plaintiffs Miranda and Richard Wallingford have been happily married and peacefully living in their Huntington Beach, California home. Miranda Decl. ¶ 3. In 2013, a new neighbor, Jessica Nguyen, moved into the property next to the Wallingfords. *Id*. ¶ 6. Right after moving in, Mrs. Nguyen began complaining about the Wallingfords' Melaleuca tree that has been growing on their front lawn for over 30 years. *Id*. ¶¶ 4, 6. At first, the Wallingfords tried to appease Mrs. Nguyen by having the tree regularly trimmed. *Id*. ¶ 7. But these efforts proved futile, as Mrs. Nguyen ultimately demanded the tree's removal. *Id.*; *see also* Decl. Sean Brady Supp. Mot. Prelim. Inj. ("Brady Decl."), Ex. A, pp. 5-6. Having lived on their property for decades without issue and having designed their front lawn's landscaping around the Melaleuca tree, the Wallingfords refused.

Angered by their refusal, Mrs. Nguyen contrived to gain leverage by falsely accusing Mr. Wallingford of assault. She petitioned for a restraining order against him, filed a small claims case against both Wallingfords, and filed a civil suit claiming their Melaleuca tree was a nuisance. Miranda Decl. ¶ 8; *see also* Brady Decl., Ex. A, pp. 5-6. Based on Mrs. Nguyen's petition, the Orange County Superior Court issued a temporary restraining order against Mr. Wallingford. Decl. Richard Wallingford Supp. Mot. Prelim. Inj. ("Richard Decl.") ¶ 11. As a result of that order, Mr. Wallingford was forced to relinquish any firearm in his possession in accordance with Penal Code section 29825 and California Code of Civil Procedure section 527.9. He complied by transferring his firearms to a properly licensed firearms dealer for storage while the temporary restraining

4

order was in effect. Richard Decl. ¶ 12.

Knowing the assault allegations to be false, and fearful of future retaliation by Mrs. Nguyen, Mrs. Wallingford had a company install three security cameras on the Wallingfords' property. Miranda Decl. ¶ 10. Before the hearing on Mrs. Nguyen's petition, the cameras captured Mrs. Nguyen making hostile gestures, damaging Plaintiffs' property, and making verbal threats towards them. Brady Decl., Ex. A, pp. 5-6.

A hearing on Mrs. Nguyen's petition was held on August 17, 2018. Brady Decl., Ex. B. After hearing testimony from the Wallingfords and reviewing other evidence, including images from the Wallingfords' security cameras, the Orange County Superior Court concluded the "only clear and convincing evidence I have heard here is—well, perhaps the only is that there's a lot of animosity by Mrs. Nguyen towards her neighbor," but not "clear and convincing evidence that there has been harassment by Mr. Wallingford towards Mrs. Nguyen." *Id*., Ex. B, p. 66:3-22. The court thus denied Mrs. Nguyen's petition. *Id*., Ex. B, p. 64:12-26, 65:1-11. Mrs. Nguyen's other claims were also later dismissed in favor of the Wallingfords. Brady Decl., Exs. C, D.[1]

With Mrs. Nguyen's petition for a restraining order dismissed, and the temporary order dissolved, Mr. Wallingford was no longer prohibited from owning or possessing firearms under Penal Code section 29825. He was therefore able to retrieve his firearms that were being stored with a licensed firearms dealer. But Mrs. Nguyen's threatening and abusive behavior towards the Wallingfords was far from over.

Late at night on May 7, 2019, the same day Mrs. Nguyen's civil suit was dismissed, the Wallingfords' security cameras captured Mrs. Nguyen sneak onto their front lawn and pour bleach on the Melaleuca tree. Brady Decl., Ex. F, p. 82. The Wallingfords called the police, who responded and were shown the video captured by the Wallingfords' security cameras. *Id*. After contacting Mrs. Nguyen, law enforcement

---

[1] The City of Huntington Beach also issued Mr. Wallingford a "detention certificate" stating the City Attorney's Office declined to prosecute and that no complaint had been filed. Brady Decl., Ex. E.

noted that "she immediately was very rude" and advised the Wallingfords to seek a restraining order. *Id*. The next month, Mrs. Nguyen placed four images of a nude female with a large octopus tattoo along a make-shift wall facing the Wallingfords' property. *Id*., Ex. F, pp. 9-10. Interpreting this as a threat, the Wallingfords again called the police, who again advised them to seek a restraining order "as it seems [they were] being harassed." *Id*., Ex. F, pp. 85-86.

The Wallingfords' security cameras continued to capture Mrs. Nguyen damaging the Wallingfords' property, making rude gestures, and making verbal threats of violence. On January 3, 2019, Mrs. Nguyen was recorded yelling "old fucker white trash, next time you'll be dead, I'll be lucky this time, white trash, I going [sic] be lucky, you'll be dead, fucking white trash." Richard Decl. ¶ 16; Miranda Decl. ¶ 13. And on May 24, 2019, Mrs. Nguyen was also recorded yelling "fucking pig, one shot, one shot, that's all I need, one shot." Richard Decl. ¶ 18; Miranda Decl. ¶ 15. Video images of Mrs. Nguyen making several throat-slitting gestures, at least one of which involved the use of a knife or similar cutting instrument, were also captured. Brady Decl., Ex. F, pp. 11, 15, 25, 72. Fearing for both her and her husband's safety as a result of Mrs. Nguyen's verbal threats of violence and escalating behavior, Mrs. Wallingford took local police officers' advice and petitioned for a restraining order against Mrs. Nguyen. *Id*.

Before the hearing on Mrs. Wallingford's petition, Mrs. Nguyen filed her own petitions for restraining orders against the Wallingfords. She raised the same false allegations of assault against Mr. Wallingford that the court had rejected before but also claimed that the Wallingfords' installation of security cameras constituted harassment that needed to be restrained. *See* Brady Decl., Exs. G, H. The Orange County Superior Court again issued a temporary restraining order against Mr. Wallingford until a formal hearing could be held. Brady Decl., Exs. I, J. Mr. Wallingford was thus once again forced to relinquish his firearms to a licensed firearms dealer in accordance with Penal Code section 29825 and Code of Civil Procedure section 527.9, while the temporary restraining order was in effect.

At an initial hearing, the court acknowledged that it had mistakenly read the false allegations raised by Mrs. Nguyen as new, separate allegations from those previously raised. *See* Brady Decl., Ex. K, pp. 54:18-26, 55:1. The court added that had it realized that was the case, it would not have issued the temporary restraining order against Mr. Wallingford. *Id*. Even so, the court inexplicably declined to dissolve the order as requested by the Wallingfords' counsel while the case proceeded. *Id*.

At the hearing, Mrs. Wallingford testified that she had hired Del Moore Security Systems to install three security cameras following Mrs. Nguyen's renewed allegations because she "didn't want to not be able to have proof of some kind of allegation like that should it happen in the future." *Id.*, Ex. K, p. 27:16-19. She also testified that she had Del Moore return to install additional cameras that would capture the entrances to the Wallingfords' property from the street and backyard through the side gate, as well as their property line because "damage was being done to [their] property that were not completely visible from the existing original cameras." *Id.*, Ex. K, p. 29:8-10, 29:12-22.

Another hearing was held on October 21, 2019, at which Mrs. Wallingford testified that even after the last hearing, the security cameras continued to capture Mrs. Nguyen engage in rude and threatening behavior and throwing trash and debris into the Wallingfords' backyard. *Id.*, Exs. L, M, pp. 52-61. She also testified that she, with assistance of the camera-company's technical support, limited the cameras' ability to record any images of Mrs. Nguyen's property. *Id.*, Ex. M, pp. 12-13. No evidence was ever presented that Mr. Wallingford installed the security cameras or directed their placement. What's more, he was never called to testify and was, in fact, ordered to remain outside for most of the hearing while Mrs. Wallingford testified. *Id*. at 7:13-16, 96-97. At the end of the October 21, 2019 hearing, the superior court took the petitions under submission. The court issued a decision on November 1, 2019.

In its opinion, the superior court found that Mrs. Wallingford had established by clear and convincing evidence that Mrs. Nguyen's behavior constituted harassment under Section 527.6. Brady Decl., Exs. N, O. Specifically, the court found "no legitimate

7

purpose to making a throat-slashing gesture towards Miranda's security cameras, or too mooning the cameras, spraying the cameras with water, or other similar conduct directed towards the cameras." *Id*. The court also found Mrs. Nguyen had "no legitimate purpose to throwing leaves, bleach, or other items on Miranda's property." *Id*. The court thus granted Mrs. Wallingford's petition for a restraining order against Mrs. Nguyen. *Id*.

The court also held that the Wallingfords' cameras constituted harassment under Section 527.6. *Id*. But the court also expressly noted that the cameras "have since been repositioned such that they point only at areas of the Nguyen's residence in public view, which the court finds acceptable." *Id*. In other words, where and how the Wallingfords' security cameras were installed at the time of the hearing ***did not*** constitute "harassment" under Section 527.6. Even so, the court granted Mrs. Nguyen's petitions for restraining orders against both Wallingfords—despite no other findings of harassing behavior or that either is a danger to the public or themselves, and even though there was no evidence that Mr. Wallingford was involved in the installation of the cameras. *Id*.

Each of the restraining orders took effect on November 1, 2019. *Id*. Those orders are currently set to expire November 1, 2022 (three years from the date of issuance). *Id*. But the orders may also be renewed for up to five more years "without a showing of any further harassment since the issuance of the original order." Cal. Civ. Proc. Code § 527.6(j)(1). While the restraining orders against the Wallingfords are in effect, the Wallingfords are prohibited from owning or possessing firearms under Penal Code section 29825. California law also prohibits the licensed firearms dealer storing the Wallingfords' firearms from returning them to the Wallingfords while the restraining orders remain in effect. Cal. Penal Code §§ 27500, 27540. And all third parties are also prohibited from providing any firearm or ammunition to the Wallingfords while the restraining order is in effect. *Id.* §§ 30306, 30370.

Mr. Wallingford is suffering from leukemia and has had other health issues during the last two years. Miranda Decl. ¶¶ 30-31. Coupled with the Covid-19 pandemic that precluded the Wallingfords from meeting with counsel during that period, the

Wallingfords have been hindered in seeking this relief until now.

## LEGAL STANDARD

To obtain preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm absent preliminary relief; (3) that the balance of equities tips in favor of injunction; and (4) that an injunction is in the public interest. *Am. Trucking Ass'ns., Inc. v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 55 U.S. 7, 20 (2008)). The Ninth Circuit also applies a "sliding scale," finding that "[a] preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011).

## ARGUMENT

### I. PLAINTIFFS ARE LIKELY TO SUCCEED ON THE MERITS

The Second Amendment provides that "the right of the people to keep and bear Arms . . . shall not be infringed." U.S. Const. amend. II. After conducting an extensive textual and historical analysis, the Supreme Court confirmed in *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008), that the Second Amendment protects an "individual right to possess and carry weapons" for self-defense. In *McDonald v. City of Chicago*, 561 U.S. 742, 750, 778 (2010), the Supreme Court held that the "right to keep and bear arms for the purpose of self-defense" recognized in *Heller* is "fully applicable to the States" because it is "among those fundamental rights necessary to our system of ordered liberty." Thus, states and municipalities must protect the individual rights protected by the Second Amendment and may not simply "enact any gun control law that they deem to be reasonable." *Id*. at 783 (plurality opinion); *see also Caetano v. Massachusetts*, -- U.S. --. 136 S. Ct. 1027 (2016).

The Ninth Circuit has developed a multi-step framework for deciding Second Amendment claims. A court first "asks whether the challenged law burdens conduct protected by the Second Amendment." *United States v. Chovan*, 735 F.3d 1127, 1136

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

(9th Cir. 2013). If it does, the court then analyzes the law under heightened scrutiny. Whether the scrutiny applied is strict or intermediate depends on "(1) how close the law comes to the core of the Second Amendment right, and (2) the severity of the law's burden on the right." *Id*. at 1138 (citations omitted). "The result is a sliding scale." *Silvester v. Harris*, 843 F.3d 816, 821 (9th Cir. 2016); *see also Rhode v. Becerra*, 445 F. Supp. 3d 902, 933 (S.D. Cal. 2020); *Duncan v. Becerra*, 265 F. Supp. 3d 1106, 1119 (S.D. Cal. 2017). If the law "imposes such a severe restriction . . . that it amounts to a destruction of the Second Amendment right," it is "unconstitutional under any level of scrutiny." *Silvester*, 843 F.3d at 821. Under Ninth Circuit precedent, a "law that implicates the core of the Second Amendment right and severely burdens that right warrants strict scrutiny." *Chovan*, 735 F.3d at 1138. Otherwise, intermediate scrutiny applies. *Silvester*, 843 F.3d at 821.

The Wallingfords have been deprived of their Second Amendment rights, even more so than the plaintiffs in *Heller*, who could at least have a disassembled long gun in their home that they could assemble in a life-threatening emergency. 554 U.S. at 528. To be sure, the government may deny the exercise of Second Amendment rights by certain groups of people. *Heller* confirms that long-standing restrictions on certain classes of people, like felons, are "presumptively lawful." *Id*. at n.26. But the Wallingfords do not fall within any of those classes *Heller* expressly identified. Nor can a reasonable case be made that they should be part of any class worthy of restrictions not expressly identified, even though *Heller's* list of "presumptively lawful" restrictions is not "exhaustive." *Id*.

Thus, even if government *might* be able to justify denying Second Amendment rights to individuals outside those expressly identified classes, its decision to do so must at least satisfy heightened scrutiny. While it *may* be able to carry its burden in restricting some individuals who are under a restraining order, because California has no interest in completely barring the Wallingfords from exercising their Second Amendment rights, it cannot meet its burden to enforce the Challenged Provisions against them. Thus, this Court should declare the Challenged Provisions unconstitutional *as applied* to Plaintiffs.

10

### A.    The Challenged Provisions Implicate the Second Amendment

The Second Amendment protects the possession of "arms" that are "typically possessed by law-abiding citizens for lawful purposes." *Heller*, 554 U.S. at 624-25. Thus, laws like the Challenged Provisions that act as a complete bar to possession of all firearms necessarily burden that constitutionally protected conduct. *See*, *e.g.*, *Chovan*, 735 F.3d at 1137 (holding that restriction on domestic violence misdemeanants from possessing firearms burdens Second Amendment conduct). To be sure, courts have upheld flat restrictions on possession by certain groups of people, holding that such laws fall outside the scope of the Second Amendment altogether. *See, e.g.*, *United States v. Phillips*, 827 F.3d 1171, 1174 (9th Cir. 2016) (upholding ban on firearm possession for non-violent felony of misprision); *United States v. Vongxay*, 594 F.3d 1111, 1115 (9th Cir. 2010) ("felons are categorically different from the individuals who have a fundamental right to bear arms"). And the Supreme Court has recognized that certain "longstanding provisions," including bans on possession by felons and the mentally-ill, are "presumptively lawful." *Heller*, 554 U.S. at 626-27 & n.26.[2] But, as explained below, the Challenged Provisions are neither "longstanding," nor comparable to the provisions identified by the *Heller* Court as "presumptively lawful." The laws implicate conduct within the scope of the Second Amendment, compelling this Court to move to the second step of the analysis.

In *Chovan*, the Ninth Circuit held that 18 U.S.C. § 922(g)(9), a federal prohibition on firearm possession by those convicted of misdemeanor crimes of domestic violence does not fall outside the Second Amendment's scope. 735 F.3d at 1137. The law was adopted in 1996 via the Lautenberg Amendment to the Gun Control Act of 1968. *Id.* It serves to ban possession of firearms by those *convicted* of a misdemeanor *crime of*

---

[2] It is still a subject of some debate whether the *Heller* Court's reference to "presumptively lawful" provisions means that such laws fall outside the scope of the right entirely or whether the "presumption" of lawfulness can be overcome. But this Court need not decide that issue here.

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

*domestic violence*. *Id.* While the law was ultimately upheld at the second step of the inquiry for reasons not relevant to this part of the analysis, *id.* at 1137-42, the Ninth Circuit's reasoning is clear that "by prohibiting domestic violence misdemeanants from possessing firearms, [section] 922(g)(9) burdens rights protected by the Second Amendment," *id.* at 1137. Indeed, the court rejected the government's argument that section 922(g)(9) is a "presumptively lawful regulatory measure" of the sort identified in *Heller*. *Id.*

Similarly, California did not impose firearm prohibitions against individuals subject to protective orders until 1991 with the adoption of Assembly Bill 108. Assem. B. 108, 1991-1992 Reg. Sess. (Cal. 1991), 1991 Cal. Stats. 4415. As explained above, courts have wide latitude to issue protective orders without any evidence that the restrained person poses a credible danger. Indeed, such orders are issued on a mere finding that "clear and convincing evidence that unlawful harassment exists." Cal. Civ. Proc. Code § 527.6(i). "Unlawful harassment" includes a "willful course of conduct directed at a specific person that seriously alarms, annoys, or harasses the person, and that serves no legitimate purpose." *Id.* § 527.6(b)(3). There need be no finding that the restrained person has engaged in violence or even a threat of violence against the petitioner (or anyone else). Nor need there be any charge or conviction for any crime.

The age and nature of the Challenged Provisions more closely resemble the 1990s-era domestic violence misdemeanant restriction at issue in *Chovan*, 735 F.3d at 1137, than the "longstanding prohibitions on the possession of firearms by *felons* and the mentally ill" identified in *Heller*, 554 U.S. at 626-27 (emphasis added). They are thus not the type of "presumptively lawful" restrictions some courts have held falls beyond the reach of the Second Amendment. Indeed, if a *conviction* for a misdemeanor *crime* of *domestic violence* does not result in a person falling outside the Second Amendment's scope, surely, a court order to maintain home-security cameras in their present locations cannot justify such a result.

Thus, the Challenged Provisions, which ban possession and acquisition of lawful

firearms by those subject to a protective order, burdens rights protected by the Second Amendment. So the Court should move to the second step of the analysis, where the Challenged Provisions must survive heightened scrutiny. This Court need not, however, decide which level of scrutiny applies, because the Challenged Provisions are unconstitutional as applied to the Wallingfords under any level of heightened review.

## B. The Challenged Provisions Fail Heightened Scrutiny as Applied to the Wallingfords

In determining whether to apply intermediate or strict scrutiny, the Ninth Circuit looks to the nature of the conduct being regulated and the degree to which the challenged law burdens the right. *Chovan*, 735 F.3d at 1138. Put another way, courts consider how close the law comes to the core of the Second Amendment right and how severely the law burdens the right. *Id.* Because the restrictions at issue completely bar the Wallingfords' exercise of their Second Amendment rights, the Court should apply strict scrutiny. *See, e.g.*, *Tucson Woman's Clinic v. Eden*, 379 F.3d 531, 544 (9th Cir. 2004) ("[A] law is subject to strict srutiny . . . when that law impacts a fundamental right, not when it infringes it."); *Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 54 (1983) (similar). But even if this Court selects intermediate scrutiny, the law is still presumed unconstitutional, and the government bears the burden of justifying it. *See, e.g.*, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992) (content-based speech regulations are presumptively invalid). That is a showing the State cannot make as applied to the Wallingfords.

To meet its burden under "intermediate scrutiny," the State must first prove the Challenged Provisions are "substantially related" to an important government interest. *Edenfield v. Fane*, 507 U.S. 761, 770-71 (1993); *see also Chovan*, 735 F.3d at 1139-40. But the State must then also prove its chosen means are "closely drawn" to achieve its interests without "unnecessary abridgement" of constitutionally protected conduct. *McCutcheon v. FEC*, 572 U.S. 185, 134 S. Ct. 1434, 1456-57 (2014) (quoting *Buckley v. Valeo*, 424 U.S. 1, 25 (1976)); *see also Jackson v. City & Cnty. of S.F.*, 746 F.3d 953,

961 (9th Cir. 2014) (noting that Second Amendment heightened scrutiny is "guided by First Amendment principles"). The State simply cannot meet either—let alone both—of those burdens in support of the Challenged Provisions as applied to the Wallingfords.

### 1. The Challenged Provisions Are Not "Substantially Related" to Any Public Safety Interest as Applied to the Wallingfords

While the Challenged Provisions may further public safety in some cases, they patently do not here. The Wallingfords are both law-abiding, responsible citizens who took reasonable protective measures by installing security cameras on their own property in response to a neighbor who filed a false assault allegation and multiple unwarranted civil actions against them. Indeed, those same cameras have repeatedly proven Mrs. Nguyen's harassing behavior and dishonesty. Brady Decl., Ex. F, pp. 9-28, 68-74, Ex. L; Miranda Decl. ¶¶ 11-18, 22, 26, 28-29; Richard Decl. ¶¶ 13-20, 27. Perhaps most importantly, the trial court never found either of the Wallingfords to be a danger to any other person, the public, or themselves. To the contrary, the Wallingfords went beyond the demands of civil society by making every reasonable accommodation to Mrs. Nguyen, having first tried to trim their tree to her satisfaction. Miranda Decl. ¶ 7; Richard Decl. ¶ 7; Brady Decl., Ex. B, pp. 64:12-26, 65:1-11. And they voluntarily reconfigured their cameras upon Mrs. Nguyen's complaints that they were violating her privacy. Yet the Wallingfords are now deprived of their fundamental constitutional rights to keep and bear arms after having done so, while living in constant fear of a neighbor who has proven herself unstable and violent. The Challenged Provisions, therefore, are not substantially related to any government interest as applied to the Wallingfords. Indeed, the Wallingfords are precisely the type of law-abiding citizens civil society should strive to protect—not punish or fear.

### 2. The Challenged Provisions Lack a Reasonable "Fit" with the State's Interest as Applied to the Wallingfords

Evening assuming the Challenged Provisions did somehow further the State's interest as applied to the Wallingfords, "intermediate scrutiny [also] requires a

'reasonable fit' between the law's ends and means." *Silvester v. Becerra*, -- U.S.--, 138 S. Ct. 945, 948 (2018) (quoting *Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 416 (1993)); *see also Chovan*, 735 F.3d at 1136, 1139. Under intermediate scrutiny, as explained by the Supreme Court, the burden is on the government to prove a "substantial relationship" between the law and an important government objective. *Clark v. Jeter*, 486 U.S. 456, 461 (1988). That means the government bears the burden of establishing that the law is "closely drawn to avoid unnecessary abridgment" of constitutional rights. *McCutcheon*, 572 U.S. at 197; s*ee also Ward v. Rock Against Racism*, 491 U.S. 781, 782-83 (1989). The State is entitled to *no deference* when assessing the fit between its purported interests and the means selected to advance them. *See Turner Broad. Sys., Inc. v. FCC*, 520 U.S. 180, 214 (1997). Instead, government must *prove* that those means do not burden "substantially more [constitutionally protected conduct] than is necessary to further [its important] interest." *Id.*

What's more, as the Court recently confirmed, even a "legitimate and substantial" governmental interest "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Ams. for Prosperity v. Bonta*, -- U.S. --, 2021 U.S. LEXIS 3569, *5 (2021). To be sure, under intermediate scrutiny, the state need not adopt the "least restrictive means." *Id.* at *19. But the government's means must be "narrowly tailored to [its] asserted interest." *Id.*; *see also Packingham v. North Carolina*, -- U.S. --, 137 S. Ct. 1730, 1736 (2017) ("[A] law must be narrowly tailored to serve a significant governmental interest."). This test ensures that the encroachment on constitutional rights does not "burden substantially more [protected conduct] than is necessary to further the government's legitimate interests." *McCullen v. Coakley*, 573 U.S. 464, 486 (2014).

Here, the Challenged Provisions have completely deprived Plaintiffs of their constitutional rights merely for taking nonviolent measures to protect their own property that any reasonable person would likely have taken in their situation. The Wallingfords' conduct was entirely in response to Mrs. Nguyen's objectively threatening conduct and

15

only for the express purpose of defending against her false allegations. Brady Decl., Ex. K, pp. 27:16-19, 29:8-10. The Wallingfords did not threaten or harm anyone. And the superior court did not articulate how the Wallingfords' camera placement constituted "harassment" under Section 527.6—a stretch of that term to be sure. Even assuming the initial placement of their cameras could be considered "harassment," the Wallingfords *voluntarily* moved the cameras upon Mrs. Nguyen's objection. That means the supposed harassment had ceased.

The scope of Section 527.6's term "harassment" is noteworthy because it includes when a person "annoys" another. Cal. Civ. Proc. Code § 527.6(b)(3). What constitutes "annoying" behavior under Section 527.6 is not clear. To be sure, the Wallingfords do not assert a facial challenge here. Regardless of its scope, however, the Wallingfords point out that merely annoying another person, even if the annoyance causes the person distress, may be sufficient grounds for a restraining order, but it likely can never be sufficient grounds to deprive a person of their fundamental constitutional rights. In any event, even if annoyance could justify such a consequence, the supposed "annoyance" here of inadvertently placing security cameras in a position that a neighbor objects to cannot qualify as such. A simple mistake of that nature cannot be enough to justify a complete ban on their fundamental rights for one day, *let alone for several years*.

The superior court acknowledged in its decision that the Wallingfords' security cameras are now "acceptable" and need not be changed. Brady Decl., Exs. N, O. What's more, no evidence was presented that Mr. Wallingford had any involvement in the installation of the security cameras. Yet the Court issued a restraining order against both Plaintiffs anyway. *Id*. Whatever arguments the State might make in support of the Challenged Provisions' "fit" with its purported interests generally, therefore, cannot be justified as reasonable *as applied* to the Wallingfords.

## II.    PLAINTIFFS CONTINUE TO SUFFER IRREPARABLE HARM

"It is well established that deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)

(quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)); 11A Charles Alan Wright et al., Federal Practice and Procedures § 2948.1 (2d ed. 1995) ("When an alleged deprivation of a constitutional right is involved, most courts hold that no further showing of irreparable injury is necessary"). The Ninth Circuit has imported the First Amendment "irreparable-if-only-for-a-minute" rule to other rights and, in doing so, has held deprivation of those rights is irreparable harm per se. *Monterey Mech. Co. v. Wilson*, 125 F.3d 702, 715 (9th Cir. 1997). The Second Amendment should be treated no differently. *See McDonald*, 561 U.S. at 780, *see also Duncan v. Becerra*, 742 F. App'x 218, 222 (9th Cir. 2018).

Because of the Challenged Provisions and the protective order they are under, the Wallingfords are barred from exercising their Second Amendment rights for years. But their harm does not end there. They are forced not only to surrender their firearms, but to pay for their storage by a third-party for the years the restraining order is in effect. Losing constitutional rights for years is sufficient harm to satisfy the irreparable harm factor, having to pay for that depravation of rights and property makes it undeniable.

## III.   THE BALANCE OF EQUITIES FAVOR A PRELIMINARY INJUNCTION

When considering the balance of hardships between parties, it cannot be said the State will suffer any concrete harm from the issuance of a preliminary injunction on an as-applied challenge. Nor can the State "suffer harm from an injunction that merely ends an unlawful practice or reads a statute as required to avoid constitutional concerns." *Rodriguez v. Robbins*, 715 F.3d 1127, 1145 (9th Cir. 2013); *see Valle del Sol Inc. v. Whitting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("[I]t is clear that it would not be equitable . . . to allow the state . . . to violate the requirements of federal law." (citations omitted)).

But even without the constitutional dimension of this lawsuit, completely barring the Wallingfords from owning or possessing firearms just because they had security cameras installed on their own property in response to court-recognized threats of violence and harassment by a neighbor—which cameras they voluntarily moved when that same neighbor complained about her privacy—cannot plausibly be understood to serve any public safety interest. This is especially so when, as here, there has been no

finding that the Wallingfords are a danger to others, the public, or themselves or that they have any history of crime or violence or any other concerning behavior. If anything, the Challenged Provisions make the public, or at least the Wallingfords, *less safe* by hindering their ability to defend themselves from an actual threat.

In short, granting an injunction will halt the ongoing violation of the Wallingfords' rights, allowing them the freedom to exercise those rights without fear of prosecution, and it will relieve them of the unjust obligation to pay a third party to store their property while the case moves forward on the merits.

## III.   A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST

When challenging a law affecting the exercise of constitutional rights, "[t]he public interest . . . tip[s] sharply in favor of enjoining the" law. *Klein v. City of San Clemente*, 584 F.3d 1196, 1208 (9th Cit. 2009). Here, the Wallingfords seek to vindicate their fundamental Second Amendment rights. As the Ninth Circuit has made clear, "all citizens have a stake in upholding the Constitution" and have "concerns [that] are implicated when a constitutional right has been violated." *Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005). Thus, not only are the Wallingfords' rights at stake, but so too the rights of other law-abiding citizens who may also find themselves unjustly denied their Second Amendment rights as a result of California's overly broad firearm restrictions for individuals subject to restraining orders. The public interest thus tips sharply in the Wallingfords' favor. *Klein*, 584 F.3d at 1208. Moreover, based on the record before the superior court, and thus this Court, the State has no plausible argument that enjoining enforcement of the Challenged Provisions as applied to Plaintiffs will unduly endanger public safety.

/ / /

/ / /

/ / /

/ / /

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CONCLUSION

For the above reasons, the Court should grant Plaintiffs' motion and enjoin enforcement of California Penal Code sections 29825, 27500, 27540, 30306, and 30370 as applied to Plaintiffs pending resolution of this case on the merits.

Dated: September 17, 2021          **MICHEL & ASSOCIATES, P.C.**


                                   *s/ Sean A. Brady*
                                   Sean A. Brady
                                   Attorneys for Plaintiffs

MEMO. OF POINTS & AUTHORITIES ISO MOT. FOR PRELIM. INJUNCTION

# CERTIFICATE OF SERVICE
## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Case Name: *Wallingford v. Becerra, et al.*
Case No.: 8:21-cv-01412 DOC (KESx)

IT IS HEREBY CERTIFIED THAT:

I, Laura Palmerin, declare under penalty of perjury that I am a citizen of the United States over 18 years of age. My business address is 180 East Ocean Boulevard, Suite 200 Long Beach, California 90802. I am not a party to the above-entitled action.

I have caused service of the following documents, described as:

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

on the following parties by electronically filing the foregoing on September 17, 2021, with the Clerk of the District Court using its ECF System, which electronically notifies them.

Rita Bosworth, Deputy Attorney General
Government Law Section
California Department of Justice
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
rita.bosworth@doj.ca.gov
   *Attorneys for Defendant Robert Bonta*

I declare under penalty of perjury that the foregoing is true and correct. Executed on September 17, 2021, at Long Beach, CA.

_____
Laura Palmerin