1  ROB BONTA
   Attorney General of California
2  HEATHER HOESTEREY
   Supervising Deputy Attorney General
3  RITA B. BOSWORTH
   Deputy Attorney General
4  State Bar No. 234964
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA  94102-7004
     Telephone:  (415) 510-3592
6    Fax:  (415) 703-5480
     E-mail:  Rita.Bosworth@doj.ca.gov
7  *Attorneys for Defendant Rob Bonta, in
   his official capacity as Attorney
8  General of the State of California*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE CENTRAL DISTRICT OF CALIFORNIA

11

12  **MIRANDA WALLINGFORD and**          8:21-cv-01412-DOC-KES
    **RICHARD WALLINGFORD,**
13                                        **DEFENDANT'S OPPOSITION TO**
                                          **PLAINTIFFS' MOTION FOR A**
                          Plaintiffs,     **PRELIMINARY INJUNCTION**
14

15         v.                             Date:        October 18, 2021
                                          Time:        8:30 a.m.
16  **ROB BONTA, in his official capacity**  Courtroom:   9D
    **as Attorney General of the State of**  Judge:       The Honorable
17  **California; and DOES 1-10,**                        David O. Carter

18                          Defendants.    Trial Date:  Not set
                                           Action Filed: 8/30/2021
19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................. 1

   I.   California Law Governing Restraining Orders ..................................... 1

   II.   The Underlying State Court Litigation and Restraining Orders
Against Plaintiffs ................................................................................. 3

      A.   First Petition for Restraining Order ........................................... 3

      B.   Second Petition for Restraining Order ...................................... 3

      C.   The Federal Complaint ............................................................. 5

LEGAL STANDARD .......................................................................... 6

ARGUMENT....................................................................................... 7

   I.   Plaintiffs Fail to Show They Are Entitled to a Preliminary
Injunction ............................................................................................ 7

      A.   Plaintiffs Are Not Likely to Succeed on the Merits .................. 7

          1.   The *Rooker-Feldman* Doctrine Bars Consideration
of Plaintiffs' Claims .......................................................... 7

          2.   The *Younger* Abstention Doctrine Prevents Federal
Courts From Interfering with State Proceedings........... 10

      B.   The Equitable Factors for a Preliminary Injunction Weigh
Decisively Against Enjoining the State Court Judgment ......... 12

          1.   Irreparable Harm .............................................................. 13

          2.   The Balance of the Equities and the Public Interest ...... 14

   II.   Plaintiffs Fail to Satisfy the Heightened Standard for a
Mandatory Preliminary Injunction that Would Alter the Status
Quo .................................................................................................... 16

CONCLUSION................................................................................... 16

# TABLE OF AUTHORITIES

**Page**

**CASES**

*3570 East Foothill Blvd., Inc. v. City of Pasadena*
    912 F. Supp. 1257 (C.D. Cal. 1995) ................................................................. 7

*Alliance for the Wild Rockies v. Cottrell*
    632 F.3d 1127 (9th Cir. 2011) ................................................................. 6, 7

*Anderson v. U.S.*
    612 F.2d 1112 (9th Cir. 1979) ............................................................. 7, 16

*Bianchi v. Rylaarsadam*
    334 F.3d 895 (9th Cir. 2003) ............................................................... 8, 9

*Brekke v. Wills*
    125 Cal. App. 4th 1400 (2005) ................................................................. 1

*Brillhart v. Excess Ins. Co. of Am.*
    315 U.S. 491 (1942) ................................................................................ 12

*Dist. Of Columbia Ct. of Appeals v Feldman*
    460 U.S. 462 (1983) ............................................................................ 7, 8, 9

*Doe & Assocs. Law Offices v. Napolitano*
    252 F.3d 1026 (9th Cir. 2001) ................................................................. 7

*Dymo Indus., Inc. v. Tapeprinter, Inc.*
    326 F.2d 141 (9th Cir. 1964) ................................................................... 6

*Ensworth v. Mullvain*
    224 Cal. App. 3d 1105 (1990) ................................................... 2, 8, 9, 16

*First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*
    356 F. Supp. 2d 1048 (N.D. Cal. 2005) ................................................. 13

*Glaser v. Meserve*
    2013 WL 1360339 (Cal. Ct. App. 2d Apr. 11, 2013) ........................... 15

*Gov't Employees Ins. Co. v. Dizol*
    133 F.3d 1220 (9th Cir. 1997) ............................................................... 12

**TABLE OF AUTHORITIES**
(continued)

Page

*Hirsh v. Justices of the Supreme Ct.*
    67 F.3d 708 (9th Cir. 1995) ................................................................... 10

*Huth v. Hartford Ins. Co. of the Midewest*
    298 F.3d 800 (9th Cir. 2002) ................................................................. 12

*Keyes v. Biro*
    2018 WL 272849 (Cal. Ct. App. 2d. Jan. 2, 2018) ............................. 11

*Kiva Health Brands LLC v. Kiva Brands Inc.*
    402 F. Supp. 3d 877 (N.D. Cal. 2019) .................................................. 13

*Lebbos v. Judges of the Super. Ct.*
    883 F.2d 810 (9th Cir. 1989) ................................................................. 10

*Lilienthal v. Crawford*
    2017 WL 3393062 (Cal. Ct. App. 2d. Aug. 8, 2017) .......................... 10

*Madsen v. Women's Health Center, Inc.*
    512 U.S 753 (1994) ................................................................................. 11

*Metromedia Broad Corp. v. MGM/UA Entm't Co, Inc.*
    611 F. Supp. 415 (C.D. Cal. 1985) ........................................................ 13

*N.L.R.B. v. Cal. Pac. Medic. Ctr.*
    991 F.2d 536 (9th Cir. 1993) ................................................................. 13

*Nken v. Holder*
    556 U.S. 418 (2009) ............................................................................... 14

*Rooker v. Fidelity Trust Co.*
    263 U.S. 413 (1923) ................................................................................. 7

*Rupp v. Beverra*
    No. 17-cv-00746-JLS-JDE, 2018 WL 2138452 (C.D. Cal. May 9,
    2018) ........................................................................................................ 14

*Schraer v. Berkeley Property Owners Ass'n*
    207 Cal. App. 3d 719 (1989) .............................................................. 1, 2

1
2

# TABLE OF AUTHORITIES
### (continued)

**Page**

3
4
*Tye v. County of Orange, et al.*
   2018 WL6136786 (C.D. Cal. Sept. 7, 2018) ...................................................... 10

5
6
*Wilton v. Seven Falls Co.*
   515 U.S. 277 (1995) ......................................................................................... 12

7
8
*Winter v. Nat. Res. Def. Council, Inc.*
   555 U.S. 7 (2008) ........................................................................................ 6, 14

9
10
*Worldwide Church of God v. McNair*
   805 F.2d 888 (9th Cir. 1986) ............................................................................ 8

11
*Younger v. Harris*
   401 U.S. 37 (1971) ................................................................................ 1, 10, 12

12
13
STATUTES

14
United States Code, Title 28
   § 2201(a) .......................................................................................................... 12

15
16
1978 California Statutes, Chapter 1307
   § 1 .................................................................................................................... 11

17
18
California Code of Civil Procedure
   § 527(j)(1) ...................................................................................................... 2, 3
   § 527.6 ..................................................................................................... *passim*
19
   § 527.6(i) ........................................................................................................... 2
20
   § 527.6(j)(1) ..................................................................................................... 10
   § 527.6(u) ...................................................................................................... 2, 6
21
   § 527.9 ............................................................................................................ 2, 6
22
   § 904.1(a)(6) .................................................................................................... 10

23
California Penal Code
   § 27500 ........................................................................................................... 2, 6
24
   § 27540 ........................................................................................................... 2, 6
25
   § 29825 ........................................................................................................... 2, 6
   § 30305 ........................................................................................................... 2, 6
26
   § 30306 ........................................................................................................... 2, 6
27
   § 30370 ........................................................................................................... 2, 6

28

# TABLE OF AUTHORITIES
### (continued)

**Page**

**COURT RULES**

California Rules of Court
 Rule 8.104.......................................................................................10

**OTHER AUTHORITIES**

Aaron M. Jolly, *Patchwork of Protection: American Regulation of*
 *Domestic Gun Violence*, 53 No. 4 Crim. Law. Bull. Art. 2 (2016)...................11

**INTRODUCTION**

Over two years ago, the Orange County Superior Court granted a temporary restraining order against Plaintiffs. After a full trial, the order was made permanent for a period of three years. It will expire on November 1, 2022. The order prohibits Plaintiffs from possessing or owning firearms or ammunition. Plaintiffs never appealed the order, they never requested modification or termination of the order, and, although they could have, they never contested the constitutionality of the restrictions on firearms in state court. Now, with the expiration of the restraining order on the horizon, Plaintiffs have filed a complaint in federal court challenging the constitutionality of the prohibition as applied, and they seek the extraordinary remedy of a preliminary injunction to prevent enforcement of the state court judgment. Plaintiffs are not entitled to the relief they seek. They have not demonstrated that their claims will succeed on the merits, nor can they meet their burden on the remaining discretionary factors to obtain a preliminary injunction.

As a threshold matter, Plaintiffs' Second Amendment claims are unlikely to succeed because this Court lacks jurisdiction to hear the case. Both the *Rooker-Feldman* doctrine and the *Younger* abstention doctrine bar Plaintiffs' claims in federal court. Moreover, the fact that Plaintiffs waited nearly two years to raise any concern over their Second Amendment rights belies their assertion that they require preliminary relief. The equitable factors weight decisively against Plaintiffs, and the motion should be denied.

**BACKGROUND**

**I. CALIFORNIA LAW GOVERNING RESTRAINING ORDERS**

California Code of Civil Procedure Section 527.6 sets forth a framework for people who suffer "harassment" to obtain a restraining order and injunction prohibiting further harassment. *Brekke v. Wills* 125 Cal. App. 4th 1400, 1412 (2005). The statute was enacted "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California constitution." *Schraer v.*

1  *Berkeley Property Owners Ass'n*, 207 Cal. App. 3d 719, 729 (1989) (citing Stats.

2  1978, ch. 1307, § 1, p. 4294; Cal. Const., art I, § 1).

3      The statute was designed to supplement existing law by providing an

4  expedited procedure to harassment victims. *Schraer* at 730. All parties have access

5  to due process protections before a permanent restraining order is issued, including

6  the ability to submit evidence and testify at trial. Cal. Code Civ. Proc. § 527.6(i). If

7  a court finds "by clear and convincing evidence that unlawful harassment exists,"

8  then "an order shall issue prohibiting the harassment." *Id.* Notably, "[section 527.6]

9  does not require the court to make a specific finding on the record that harassment

10  exists, nor does it require specific findings of the statutory elements of harassment."

11  *Ensworth v. Mullvain* 224 Cal. App. 3d 1105, 1112 (1990). The granting of the

12  injunction itself necessarily implies that the trial court found all the necessary

13  elements of unlawful harassment. *Id.*

14      Both the California Civil Procedure and Penal Codes instruct that a person

15  subject to a restraining order "shall not own, possess, purchase, receive, or attempt

16  to purchase or receive a firearm or ammunition while the protective order is in

17  effect." Cal. Code Civ. Proc. § 527.6(u); Cal. Pen. Code §§ 29825, 30305, 30370

18  (prohibiting anyone subject to a restraining order from possessing or purchasing

19  firearms or ammunition); Cal. Pen. Code §§ 27500, 27540, 30306 (prohibiting

20  dealers from selling or delivering firearms or ammunition to anyone subject to a

21  restraining order). Prohibited persons must relinquish any firearms they own or

22  possess within 24 hours of being served with the order. Cal. Code Civ. Proc. §

23  527.9. The court has discretion to issue the restraining order for no more than five

24  years, and the order is "subject to termination or modification by further order of

25  the court either on written stipulation filed with the court or on the motion of a

26  party." *Id.* § 527(j)(1).

27

28

## II. THE UNDERLYING STATE COURT LITIGATION AND RESTRAINING ORDERS AGAINST PLAINTIFFS

### A.    First Petition for Restraining Order

Beginning in or around 2013, Plaintiffs had a dispute with their neighbor, Jessica Nguyen, regarding a tree in front of their home. The dispute escalated, and on June 25, 2018, Ms. Nguyen filed a petition for a restraining order against Plaintiff Richard Wallingford. Request for Judicial Notice ("RJN") Ex. A. In the petition, Ms. Nguyen made assault allegations against Mr. Wallingford, claiming that he physically attacked her and made racial slurs toward her. *Id.* Specifically, Ms. Nguyen asserted that Mr. Wallingford "pulled my hair, pushed me down to the ground" and said "stupid immigrant, go back to your country." *Id.* The court granted the temporary restraining order, and Mr. Wallingford relinquished his firearms to a California licensed firearms dealer the following day pursuant to California Code of Civil Procedure § 527.6. Declaration of Richard Wallingford, ¶ 12. Plaintiffs subsequently had security cameras installed, which captured portions of Ms. Nguyen's property and recorded her statements. Brady Decl. Exs. K, M.

The court held a hearing on August 17, 2018. Brady Decl. Ex. B. At the hearing, Ms. Nguyen represented herself pro se. *Id.* At no point in Plaintiff Richard Wallingford's filings or during the court hearing did he express urgency in receiving his firearms back, nor did he raise any constitutional challenges to the firearms restriction provision. The court denied Ms. Nguyen's petition for a restraining order. *Id.* Plaintiff Richard Wallingford subsequently regained possession of his firearms. Dkt. 12-1 at 5:18-19.

### B.    Second Petition for Restraining Order

The following year, on June 17, 2019, Plaintiff Miranda Wallingford filed a petition for a temporary restraining order against Ms. Nguyen, which was granted. Brady Decl. Ex. F. Prior to the hearing, on September 5, 2019, Ms. Nguyen filed two new petitions seeking temporary restraining orders against both Plaintiffs. RJN

Ex. B. Ms. Nguyen alleged that the security cameras were positioned toward private areas of her home and yard not visible to the public, which made her "feel unsafe in my own residence," and alleged that the cameras constituted harassment. *Id.* Exs. B, C. As to Plaintiff Richard Wallingford, Ms. Nguyen re-alleged the 2018 assault, stating: "He grabbed my hair so hard that a patch came out. He then hit me on the back of my neck, and forced me to the ground. I had injuries to my knee, neck and hand." *Id.* Ex. C. The court also granted Ms. Nguyen's petitions, and the next day, Plaintiff Richard Wallingford again transferred his firearms to a California licensed firearms dealer for storage. Dkt. 12-1 at 6:25-28.

The court held a trial over the course of two full days. Brady Decl. Exs. K, M. At the trial, Ms. Nguyen testified to several incidents of harassment by Plaintiffs. *Id.* She testified that the cameras installed by Plaintiffs pointed to private areas of her home. *Id.* Ex. M at 133. She testified that she did not know the cameras had audio capability that were recording what she said around the cameras, and that she was not directing any statements toward Plaintiffs. *Id.* at 134. She testified that Mr. Wallingford got angry at her for putting up a barrier on her side of the yard and threatened to call the city on her to report a code violation, and that Mrs. Wallingford did in fact call the city. *Id.* at 137-138. She testified that Mrs. Wallingford "came out and broke my plants" and "stuffed all the leaves that fell onto the common middle wall . . . down into my yard." *Id*. at 139. She contested a number of Plaintiffs allegations, stating for example that while Plaintiffs accused her of spraying water on their cameras, she was actually watering her plants. *Id*. at 184. She also stated that, while Plaintiffs complained her clothing was intentionally "vulgar," she was not intending to offend anyone by wearing short shorts and bending over while gardening. *Id.* at 156. Ms. Nguyen testified that she suffered emotional harm and that she began taking "depression medication for anxiety" because she felt like "I don't have freedom in my own home anymore." *Id*. at 181.

1    At the end of the trial, Plaintiffs' counsel requested that the court issue a ruling

2    that same day. Brady Decl. Ex. M at 186:12-14. The court declined, stating:

3        I am inclined to hear closing arguments and take the whole ball of wax
         under submission. . . . And then, you know, review my notes, which now
4        consist of almost an entire yellow pad, as well as the declarations and
         responses and requests and so forth that the court has before it. It's going
5        to take some effort. I can't just rule on the fly.

6    *Id.* At 188:1-9.

7    On November 1, 2019, the court issued a written judgment granting the

8    restraining orders as to both Plaintiffs and Ms. Nguyen for a period of three years.

9    Brady Decl. Ex. N. The court found that Plaintiffs' security cameras captured

10   "private areas" of Ms. Nguyen's property, though it acknowledged that they had

11   since been repositioned. *Id.* The court further held:

12       The court finds Nguyen has established by clear and convincing evidence
         harassment by Miranda and Richard within the meaning of CCP § 527.6.
13       The court finds Miranda and Richard engaged in a knowing and willful
         course of conduct directed at a specific person that seriously alarms,
14       annoys, or harasses that person, and that serves no legitimate purpose;
         that there is a reasonable probability future [harassment would] occur
15       absent a protective order; and that Nguyen has suffered substantial
         emotional distress and a reasonable person would suffer substantial
16       emotional distress if subjected to Miranda's and Richard's conduct.

17   *Id.*

18   Plaintiffs do not allege that they ever sought to modify, terminate, or appeal

19   the restraining order, nor do they allege that they ever raised any constitutional

20   claims in state court.

21   **C.    The Federal Complaint**

22   On August 30, 2021, Plaintiffs filed a complaint against defendant Rob Bonta,

23   in his official capacity as Attorney General of the State of California in district

24   court. They allege that "California's complete restriction on firearm or ammunition

25   possession and acquisition by any person subject to a civil restraining order,

26   regardless of the basis for the order, is unconstitutional *as applied* to Plaintiffs."

27   Dkt. 1 ¶ 8. Specifically, they allege that California Civil Procedure and Penal Code

28   statutes instructing that a person subject to a restraining order "shall not own,

1  possess, purchase, receive, or attempt to purchase or receive a firearm or
2  ammunition while the protective order is in effect" violate the Second Amendment
3  of the United States Constitution and the Due Process Clause in Plaintiffs' case.
4  Dkt. 1 ¶¶ 18-19; Cal. Code Civ. Proc. § 527.6(u); Cal. Pen. Code §§ 29825, 30305,
5  30370 (prohibiting anyone subject to a restraining order from possessing or
6  purchasing firearms or ammunition); Cal. Pen. Code §§ 27500, 27540, 30306
7  (prohibiting dealers from selling or delivering firearms or ammunition to anyone
8  subject to a restraining order). Plaintiffs also contest California's requirement that
9  prohibited persons must relinquish any firearms they own or possess within 24
10  hours of being served with the order. Dkt. 1 ¶ 19; Cal. Code Civ. Proc. § 527.9.
11  They seek "a judicial declaration that the Challenged Provisions violate Plaintiffs'
12  constitutional rights" and injunctive relief to prevent defendants from
13  "continue[ing] to enforce the Challenged Provisions in violation of Plaintiffs'
14  constitutional rights." Dkt. 1 ¶¶ 54, 56.

15      On September 17, 2021, Plaintiffs filed a motion for preliminary injunction,
16  requesting that the Court "enjoin enforcement of California Penal Code sections
17  29825, 27500, 27540, 30306, and 30370 as applied to Plaintiffs pending resolution
18  of this case on the merits." Dkt. 12-1 at 19:2-4.

19                        **LEGAL STANDARD**

20      "A preliminary injunction is an extraordinary remedy never awarded as of
21  right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Dymo Indus.,*
22  *Inc. v. Tapeprinter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964) (per curium). In seeking
23  one, Plaintiffs must demonstrate that (1) they are likely to succeed on the merits of
24  their claims; (2) they will likely suffer irreparable harm without preliminary relief;
25  (3) the balance of equities tips in their favor, and (4) that an injunction is in the
26  public interest. *Winter*, 555 U.S. at 20; *Alliance for the Wild Rockies v. Cottrell*,
27  632 F.3d 1127, 1135 (9th Cir. 2011). Alternatively, a preliminary injunction may

28

issue "if there are serious questions on the merits and the balance of hardships tips sharply in plaintiff's favor." *Id.*

Moreover, because Plaintiffs seek a preliminary injunction to *change* the status quo, they must carry a "heavy burden of persuasion." *3570 East Foothill Blvd., Inc. v. City of Pasadena*, 912 F. Supp. 1257, 1260 (C.D. Cal. 1995). "Mandatory preliminary relief, which goes well beyond simply maintaining the status quo pendente lite, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted).

## ARGUMENT

### I.   PLAINTIFFS FAIL TO SHOW THEY ARE ENTITLED TO A PRELIMINARY INJUNCTION

#### A.   Plaintiffs Are Not Likely to Succeed on the Merits

This Court lacks jurisdiction to hear this case. Plaintiffs spend the entirety of the merits portion of their motion asserting that the statutes they challenge violate the Second Amendment, but they fail to address this threshold issue which means they have no likelihood of success on the merits.

##### 1.   The *Rooker-Feldman* Doctrine Bars Consideration of Plaintiffs' Claims

The *Rooker-Feldman* doctrine is an independent bar to the Court's consideration of Plaintiffs' claims against defendant. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415-16 (1923); *Dist. Of Columbia Ct. of Appeals v Feldman*, 460 U.S. 462, 486-87 (1983). "The purpose of the [*Rooker-Feldman*] doctrine is to protect state judgments from collateral federal attack. Because district courts lack power to hear direct appeals from state court decisions, they must decline jurisdiction whenever they are 'in essence called upon to review the state court decision.'" *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir. 2001) (quoting *Feldman*, 460 U.S. at 482 n.16). A district court may not

adjudicate an action that seeks to reverse or nullify a state court judgment, nor may it adjudicate issues that are "inextricably intertwined" with those adjudicated by the state court. *Feldman*, 460 U.S. at 486-87.

Importantly, the *Rooker-Feldman* doctrine "applies even when the challenge to the state court decision involves constitutional issues." *Worldwide Church of God v. McNair*, 805 F.2d 888, 891 (9th Cir. 1986). As the Ninth Circuit has explained:

> It is immaterial that [Plaintiff] frames his federal complaint as a constitutional challenge to the state courts' decisions rather than as a direct appeal of those decisions. The *Rooker-Feldman* doctrine prevents lower federal courts from exercising jurisdiction over any claim that is "inextricably intertwined" with the decisions of a state court, *even where the party does not directly challenge the merits of the state court's decision* but rather brings an indirect challenge based on constitutional principles. Thus, *Rooker-Feldman* bars federal adjudication of any suit in which a plaintiff alleges an injury based on a state court judgment and seeks relief from that judgment, not only direct appeals from a state court's decision.

*Bianchi v. Rylaarsdam*, 334 F.3d 895, 900, n.4 (9th Cir. 2003) (emphasis added, citations omitted).

Here, Plaintiffs make a very fact-dependent claim that the challenged statutes are unconstitutional *as applied* to the specific circumstances of their case. Dkt. 1 ¶¶ 8, 60-62, 66. This is not a general challenge to the face of the statute, it is a challenge that is exclusive to and therefore inextricably intertwined with this judgment. Plaintiffs complain that the state court "made no finding that Plaintiffs had broken any law with the positioning of their cameras," that it did not "make any finding that Plaintiffs posed a danger to any person or the public," and that it "never even explained exactly how Plaintiffs' action constituted 'harassment.'" *Id.* ¶ 61. However, section 527.6 "does not require a statement of the court's findings of fact," it "does not require the court to make a specific finding on the record that harassment exists, nor does it require specific findings of the statutory elements of harassment." *Ensworth v. Mullvain*, 224 Cal. App. 3d 1105, 1112 (1990). "The granting of the injunction itself necessarily implies that the trial court found [the

defendant] knowingly and willfully engaged in a course of conduct that seriously alarmed, annoyed, or harassed" plaintiff, and that plaintiff "actually suffered emotional distress." *Id.* Plaintiffs clearly disagree with the judgement and wish to challenge the superior court's findings of fact, but this Court does not have jurisdiction to do what they ask. *Rooker-Feldman* instructs that this "indirect challenge based on Constitutional principles" must be dismissed. *Bianchi*, *supra,* at n. 4.

Whether or not the state court ruled correctly or incorrectly is of no concern here. All that matters is that Plaintiffs allege an injury that stems from the state court judgment. "The *Rooker-Feldman* doctrine does not require us to determine whether or not the state court fully and fairly adjudicated the constitutional claim." *See Feldman*, 460 U.S. at 488. "If the injury alleged resulted from the state court judgment itself, *Rooker-Feldman* directs that the lower federal courts lack jurisdiction." *Bianchi*, 334 F.3d at 900 (*quoting Garry v. Geils*, 82 F.3d 1362, 1365 (7th Cir. 1996)). Indeed, even if the state court made an erroneous ruling on the facts, Plaintiffs cannot bring such a challenge in federal court. *Rooker-Feldman* bars an action when "the plaintiffs' injury stemmed from the state judgment—an erroneous judgment, perhaps, entered after procedures said to be unconstitutional, but a judgment nonetheless." *Bianchi*, 334 F.3d at 901 (*quoting GASH Associates v. Village of Rosemont, Ill*, 995 F.2d 726,728 (7th Cir. 1993)). Here, there is no reason to believe that the state court erred. But even if it did, *Rooker-Feldman* bars relief in federal court.

Plaintiffs frame their disagreement with the state law as a constitutional challenge, but in actuality it is a collateral attack on a state court judgment over the facts in these particular circumstances. This situation is clear cut: the superior court entered a judgment on the facts of this case, Plaintiffs claim an injury that stems directly from that judgment, and therefore this Court lacks jurisdiction. As such, Plaintiffs' claims are unlikely to succeed on the merits, and the preliminary

1  injunction should be denied. *See, e.g., Tye v. County of Orange, et al.*, 2018

2  WL6136786 *4-5 (C.D. Cal. Sept. 7, 2018) (dismissing motion for preliminary

3  injunction because it was barred by *Rooker-Feldman*).

4    **2.    The Younger Abstention Doctrine Prevents Federal Courts From Interfering with State Proceedings**

5

6    Plaintiffs are also unlikely to succeed on the merits because the *Younger*

7  abstention doctrine directs federal courts to abstain from granting injunctive or

8  declaratory relief that would interfere with pending state judicial proceedings. *Hirsh*

9  *v. Justices of the Supreme Ct.,* 67 F.3d 708, 712 (9th Cir. 1995), citing *Younger v.*

10  *Harris*, 401 U.S. 37, 40-41 (1971). Absent "extraordinary circumstances,"

11  abstention in favor of state judicial proceedings is required if the state proceedings

12  (1) are ongoing, (2) implicate important state interests, and (3) provide the plaintiff

13  an adequate opportunity to litigate federal claims. *Hirsh*, 67 F.3d at 712, citing

14  *Middlesex Cnty. Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432

15  (1982). Abstention is appropriate based on "interests of comity and federalism

16  [that] counsel federal courts to abstain from jurisdiction whenever federal claims

17  could have been or could be presented in ongoing state judicial proceedings that

18  concern important state interests." *Lebbos v. Judges of the Super. Ct.*, 883 F.2d 810,

19  813 (9th Cir. 1989).

20    All three abstention criteria are satisfied here. First, Plaintiffs' state judicial

21  proceedings are ongoing. The restraining order against Plaintiffs was issued on

22  November 1, 2019, and it will be in place for 3 years. Brady Decl. Ex. N. It remains

23  "subject to termination or modification by further order of the court," Cal. Code

24  Civ. Proc. § 527.6(j)(1). Moreover, each new or modified restraining order is

25  subject to immediate appeal. *See* Cal. Code Civ. Proc. § 904.1(a)(6), Cal. Rules of

26  Court 8.104. As such, the proceeding is ongoing. *Lilienthal v. Crawford*, 2017 WL

27  3393062 at *2 (Cal. Ct. App. 2d. Aug. 8, 2017) (finding that final civil harassment

28  restraining order could be challenged because it was still in effect).

Second, Plaintiffs' state-court litigation implicates important state interests. The Supreme Court has identified the broad common law "right to be let alone" that is "an 'interest' that states can choose to protect in certain situations." *Keyes v. Biro*, 2018 WL 272849 *7, n. 5 (Cal. Ct. App. 2d. Jan. 2, 2018) (quoting *Hill v. Colorado*, 530 U.S. 703, 717, n. 29 (2000)); *see also Madsen v. Women's Health Center, Inc.*, 512 U.S 753, 775 (1994) ("the State's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society.").  Indeed, California enacted section 527.6 with the express purpose "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California constitution." (Stats. 1978, ch. 1307, § 1, p. 4294). In addition, promoting policies and laws that reduce gun violence unequivocally advances a state interest. *See* Aaron M. Jolly, *Patchwork of Protection: American Regulation of Domestic Gun Violence*, 53 No. 4 Crim. Law. Bull. Art. 2 (2016) (As a result of domestic gun violence, the California legislature enacted more than thirty laws, including laws reducing access to weapons by those deemed too dangerous to possess firearms). Indeed, California's increased regulation of firearms has led to a steep decline in gun violence in the state. *See* U.S. Ctr. For Disease Control & Prevention – Nat'l Ctr. For Injury Prevention & Control, Web-based Injury Statistics Query & Reporting System (WISQARS), 1981-2019 Fatal Injury Report, http://webappa.cdc.gov/sasweb/ncipc/mortrate9.html (last accessed Sept. 17, 2021) (documenting that firearm death rates in California dropped by more than half from 1981 to 2021). The state has an interest keeping people safe, and regulating firearms is an effective and permissible means to do so.

Third, Plaintiffs had an adequate opportunity to raise federal issues in their state court proceeding. They were free to appeal the order, make a motion to modify or terminate the order, and challenge the constitutionality of the statutes in state court. All of these actions are jurisdictionally permissible. They did none of these things, and instead are attempting to collaterally attack the state court decision

in federal court. Even if they had availed themselves of any or all avenues for relief available to them in the state proceedings, this Court would still be required to abstain from exercising its jurisdiction because all three *Younger* criteria have been met. As such, Plaintiffs are unlikely to succeed on the merits of their case.

Finally, to the extent Plaintiffs rely on the Federal Declaratory Judgment Act, 28 U.S.C. § 2201(a), as a basis for jurisdiction, federal district courts have discretion to decline to exercise jurisdiction under that Act. *See, e.g., Wilton v. Seven Falls Co.,* 515 U.S. 277, 282-83 (1995); *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1997) (en banc). In exercising that discretion, "[a] district court should [1] avoid needless determination of state law issues; [2] it should discourage litigants from filing declaratory actions as a means of forum shopping; and [3] it should avoid duplicative litigation." *Huth v. Hartford Ins. Co. of the Midewest*, 298 F.3d 800, 803 (9th Cir. 2002). "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Brillhart v. Excess Ins. Co. of Am.*, 315 U.S. 491, 495 (1942). Here, the Court is likely to use its discretion to decline to consider the declaratory relief Plaintiffs seek pursuant to section 2201 because this is a state law issue that belongs in state court. Allowing this case to go forward would open the floodgates to litigation in federal courts that rightfully belongs in the state, it would encourage forum shopping, and it would duplicate litigation in the state.

Plaintiffs have failed to show that they are likely to succeed on the merits, and the motion for preliminary injunction should be denied.

**B.    The Equitable Factors for a Preliminary Injunction Weigh Decisively Against Enjoining the State Court Judgment**

In addition to the fact that Plaintiffs are unlikely to succeed on the merits, the equitable factors that the Court considers in a preliminary injunction motion weigh decisively against granting Plaintiffs' motion.

### 1.    Irreparable Harm

A plaintiff's "long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Miller for and on behalf of N.L.R.B. v. Cal. Pac. Medic. Ctr.*, 991 F.2d 536, 544 (9th Cir. 1993) (citation omitted). Indeed, Courts in this Circuit have found delays of three months in seeking injunctive relief to indicate absence of irreparable harm. *First Franklin Fin. Corp. v. Franklin First Fin. Ltd.*, 356 F. Supp. 2d 1048, 1055 (N.D. Cal. 2005); *see also Metromedia Broad Corp. v. MGM/UA Entm't Co, Inc.,* 611 F. Supp. 415, 427 (C.D. Cal. 1985) (concluding that four-month delay warranted denying injunctive relief); *Kiva Health Brands LLC v. Kiva Brands Inc.*, 402 F. Supp. 3d 877, 898-99 (N.D. Cal. 2019).

The restraining order in this case was issued on November 1, 2019, almost two years ago. Brady Decl. Ex. N. Yet Plaintiffs did not bring this action until August 30, 2021. Plaintiffs claim generally that they are harmed because they "are barred from exercising their Second Amendment rights for years" and that they must "pay for their storage by a third-party for the years the restraining order is in effect." Dkt. 12-1 at 17:10-12. But had they not waited so long to challenge the order, or had they timely appealed or made a motion to modify or terminate the order, they would have had an opportunity much sooner to present their case for relief from the very harm they allege. Nothing in their motion distinguishes this particular moment from any other in the past two years as being especially urgent such that preliminary injunctive relief is necessary.

Plaintiffs attempt to explain why they waited so long to file this case, but regardless of Plaintiffs' reasons, delay in and of itself can show lack of urgency and irreparable harm. And, to the extent Plaintiffs' personal circumstances prevented them from litigating these issues in a timely fashion in state court, they cannot rectify that delay in this federal suit. At the very least, they could have filed their complaint in the months immediately following the issuance of the restraining

1   order, which was before the COVID-19 pandemic, before their health issues

2   escalated, and closest in time to the alleged harm. Their explanations neither justify

3   their significant delay nor the relief they seek.

4       Any challenge to the restraining orders could have, and should have, been

5   filed years ago. Plaintiffs' delay strongly suggests that any harm flowing from the

6   state court judgment will not be irreparable.

7               **2.    The Balance of the Equities and the Public Interest**

8       Plaintiffs must also establish that the public interest warrants a preliminary

9   injunction. A district court "must balance the competing claims of injury and

10  consider the effect" of the requested relief, paying "particular regard for the public

11  consequences in employing the extraordinary remedy of injunction." *Winter*, 555

12  U.S. at 24 (quotation omitted). The balance of the equities and the public interest

13  "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S.

14  418, 435 (2009). Indeed, "[t]he Ninth Circuit instructs that when balancing the

15  hardships 'of the public interest against the private interest, the public interest

16  should receive greater weight.'" *Rupp v. Beverra*, No. 17-cv-00746-JLS-JDE, 2018

17  WL 2138452 at *3 (C.D. Cal. May 9, 2018) (quotation omitted).

18      Plaintiffs claim that the state court judgment "cannot plausibly be understood

19  to serve any public safety interest." Dkt. 12-2 at 17:27-28. But the state absolutely

20  has an interest in upholding and enforcing its laws and judgments, particularly

21  when they are the result of full due process protections and thoughtful judicial

22  consideration. The state court judgement was issued after two full days of trial with

23  all parties given the opportunity to present evidence and witnesses. Brady Decl.

24  Exs. K, M. The court specifically noted that it had "almost an entire yellow pad" of

25  notes and that ruling was going to "take some effort." *Id*. Ex. M. It also reviewed

26  the three additional civil actions that were pending between the parties. *Id.* Ex. N.

27  Upon consideration of all the evidence, the court concluded that "Miranda and

28  Richard engaged in a knowing and willful course of conduct directed at a specific

person that seriously alarms, annoys, or harasses that person," and that "Nguyen has suffered substantial emotional distress and a reasonable person would suffer substantial emotional distress if subjected to Miranda's and Richard's conduct." *Id.* That is what the court, who had the benefit of all the evidence, including judging witness demeanor and credibility, and who is regularly tasked with ruling on petitions for restraining orders, found. Plaintiffs clearly disagree with the court's conclusion, but it is undeniable that the state has an interest in upholding and enforcing valid state court orders, and that this order was given serious consideration by the finder of fact.

Plaintiffs also make the claim that the public interest weighs in their favor because "not only are the Wallingfords' rights at stake, but so too the rights of other law-abiding citizens who may also find themselves unjustly denied their Second Amendment rights as a result of California's overly broad firearm restrictions for individuals subject to restraining orders." Dkt. 12 at 18:16-19. However, this argument is undermined by Plaintiffs' own complaint, which deliberately identifies this as an *as applied* challenge that pertains only to Plaintiffs. Thus, it cannot be said that this ruling will have the broad negative consequences on the public that Plaintiffs assert. And, California's statutes prohibiting individuals subject to restraining orders from possessing firearms are lawful regulatory measures that do not violate the Second Amendment. *Glaser v. Meserve*, 2013 WL 1360339, *7 (Cal. Ct. App. 2d Apr. 11, 2013) (holding that "the firearms restrictions in section 527.6 do not run afoul of the Second Amendment.").

Finally, the state clearly has an interest in keeping the public safe, which is exactly what this law is designed to do. *See* Stats. 1978, ch. 1307, § 1, p. 4294 (California enacted section 527.6 with the express purpose "to protect the individual's right to pursue safety, happiness and privacy as guaranteed by the California constitution."). While Plaintiffs' assert that there is "no plausible argument" that enjoining enforcement of the firearm provision will "unduly

endanger public safety," the underlying record in this case demonstrates that there is a long and messy history between Plaintiffs and Ms. Nguyen, one that goes far beyond what was written in the final court order or outlined in Plaintiffs' brief. Dkt. 12-1; Brady Decl. Exs. B, K, M. In granting the injunction, the state court necessarily found that harassment existed and that a restraining order, with all its accompanying provisions, was appropriate and in the public interest. *Ensworth v. Mullvain*, 224 Cal. App. 3d 1105, 1112 (1990). The court should decline to second guess that decision.

The equities and the public interest weigh heavily against enjoining enforcement of a state court order in this case. Accordingly, Plaintiffs' motion for preliminary injunction must be denied.

## II.   PLAINTIFFS FAIL TO SATISFY THE HEIGHTENED STANDARD FOR A MANDATORY PRELIMINARY INJUNCTION THAT WOULD ALTER THE STATUS QUO

Plaintiffs seek to enjoin the enforcement of state law, which means the requested relief would change rather than preserve the status quo. This, in turn, means that Plaintiffs must establish that the law and facts clearly favor their position, not simply that they are likely to succeed on their claims. *Anderson v. U.S.*, 612 F.2d 1112, 1114 (9th Cir. 1979) (citation omitted). But, even though Plaintiffs seek to *alter* the status quo, they have not shown that the facts and the law "clearly favor" such relief. Indeed, they have yet to address the jurisdictional issues that bar this claim in federal court. Because they fail to make that showing, the motion could be denied for this reason alone.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion.

1    Dated:  September 27, 2021               Respectfully submitted,

2                                            ROB BONTA
                                             Attorney General of California
3                                            HEATHER HOESTEREY
                                             Supervising Deputy Attorney General
4
                                                 /s/ Rita B. Bosworth
5
                                             RITA B. BOSWORTH
6                                            Deputy Attorney General
                                             *Attorneys for Defendant Rob Bonta, in*
7                                            *his official capacity as Attorney*
                                             *General of the State of California*
8    SA2021304326
     42878513.docx
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28